1

2                                                      **E-Filed 6/22/2010**

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12   MEHRDAD NIKOONAHAD,              | Case Number CV 10-01247 JF (PVT)

13                      Plaintiff,

                                       **ORDER[1] GRANTING MOTION TO
14          v.                         REMAND**

15                                     [re doc. no. 13, 17]
     GREENSPUN CORPORATION; G.C.
16   INVESTMENTS, LLC; THIRD POINT
     PARTNERS L.P.; THIRD POINT PARTNERS
17   QUALIFIED L.P.; THIRD POINT OFFSHORE
     FUND, LTD.; THIRD POINT ULTRA LTD.;
18   THIRD POINT LLC; TIMOTHY LASH; ROBERT
     SCHWARTZ; and DOES 1 through 25,

19                      Defendants.

20

21

22          Plaintiff Mehradad Nikoonahad ("Nikoonahad") moves to remand the instant action to

23   the Santa Clara Superior Court for lack of diversity jurisdiction pursuant to 28 U.S.C. § 1332, *et*

24   *seq.* (2006). The Court has considered the moving and responding papers and the oral arguments

25   of counsel presented at the hearing on June 18, 2010. For the reasons discussed below, the

26   motion will be granted.

27   _____

28          [1] This disposition is not designated for publication in the official reports.

# I. BACKGROUND

**A. Factual History**

Nikoonahad was CEO and director of Solar Notion, Inc. ("Solar Notion") a Delaware corporation which had its principal and only place of business in Santa Clara County, California. (Compl. ¶ 1.) Nikoonanahad is a resident of California and holds 7,900,000 shares of 10,182,984 outstanding Solar Notion common shares. (Compl. ¶ 2.)

In August 2007, Nikoonahad, as President and CEO of Solar Notion, entered into an Investors' Rights Agreement with Robert Schwartz; Timothy Lash; Third Point Offshore Fund, Ltd.; Third Point Partners, L.P.; Third Point Partners Qualified, L.P.; and Third Point Ultra Ltd.(Compl. ¶ 14.) On December 7, 2007 the same parties executed an Amended and Restated Investors' Rights Agreement (the "Agreement") which added two new investors Greenspun Corporation and G.C. Investments LLC ("G.C. Investments") (because of the multiple parties involved, signatories of the Agreement except for Solar Notion will be referred to as the "Investors"). (Compl. ¶ 15.)

Paragraph 2.8 of the Agreement contained a provision that gave joint voting rights to Third Point LLC ("Third Point")--the investment manager of Third Point Offshore Fund, Ltd.; Third Point Partners, L.P.; Third Point Partners Qualified, L.P.; and Third Point Ultra Ltd.--and G.C. Investments and required Solar Notion to repurchase all of Solar Notion's Series A Preferred stock at a formulated price if an agreed "Milestone" was not reached on or before February 17, 2008. (Compl. ¶ 16.)

On or about December 11, 2007, Nikoonahad informed Robert Schwartz ("Schwartz"), who represented Third Point LLC, that Solar Notion would have difficulty reaching the Milestone set out in the Agreement. Nikoonahad outlined an alternative approach that would meet the same objectives but at a later date. (Compl. ¶ 20.) Nikoonahad alleges Third Point and G.C. Investments communicated their approval of the plan, and that Schwartz told his investors that Solar Notion could meet production expectations. (Compl ¶ 22.) On February 20, 2008 Solar Notion terminated its Chief Technology Officer, and Nikoonahad's alternate plan was approved

2

by the board. (Compl. ¶ 23.) The termination of the Chief Technology Officer resulted in Solar

Notion having a three-member board of directors consisting of Nikoonahad, Schwartz, and Lash.

(Compl. ¶ 23.)

On March 12, 2008, Third Point and G.C. Investments exercised their redemption right

pursuant to the Agreement. (Compl. ¶ 26.) Nikoonahad alleges that under the formula in the

Agreement, the redemption price would have been approximately $5.25 million. (Compl. ¶ 28.)

After giving notice of redemption, Schwartz and Lash, in their capacity as directors of the

company, proposed "Amendment No. 1 to Amended Restated Investors' Rights Agreement" (the

"Amendment"), whereby Solar Notion would purchase 93% of the Series A shares for $13.8

million instead of 100% of the shares for $5.25 million as provided in the Agreement (Compl. ¶

29.) Nikoonahad alleges that Schwartz and Lash threatened him with termination and legal action

if he refused to approve the Amendment. (Compl. ¶ 30.) The Amendment thereafter was

approved by all three directors. (Compl. ¶ 32.) The Amendment included new terms that

prevented Solar Notion from receiving any debt or equity financing for six months after April 30,

2008, and required Solar Notion to get approval from Third Point and G.C. Investments for any

expenditure that had not been pre-cleared. (Compl. ¶ 34.) The Amendment also required Solar

Notion to cease operations, terminate all of its employees, and appoint a person to wind-up the

company's corporate affairs by April 30, 2008. (Mot. to Remand 4:21-22, Apr. 24, 2010.) On

December 19, 2008 the Santa Clara Superior Court issued an order to wind up and dissolve Solar

Notion. (Compl. ¶ 1.)

On April 10, 2009, Nikoonahad filed a direct action against Greenspun Corporation; G.C.

Investments, LLC; Third Point Partners L.P.; Third Point Partners Qualified L.P.; Third Point

Offshore Fund, Ltd.; Third Point Ultra Ltd.; Third Point LLC; and Does 1 through 25 in the

Santa Clara Superior Court. (Defs.' Opp'n 3:23, May 28, 2010.) Defendants removed that action

to this Court, where it was dismissed by Magistrate Judge Howard R. Lloyd. *See Nikoonahad v.*

*Greenspun Corp.*, No. 09-02242, 2010 U.S. Dist. LEXIS 44150, at *16 (N.D. Cal. Mar. 31,

2010) ("*Nikoonahad I*").

1  **B. Procedural History**

2        On January 27, 2010, Nikoonahad filed the instant derivative suit in the Santa Clara

3  Superior Court on behalf of shareholders of Solar Notion against Robert Schwartz; Timothy

4  Lash; Greenspun Corporation; G.C. Investments, LLC; Third Point Partners L.P.; Third Point

5  Partners Qualified L.P.; Third Point Offshore Fund, Ltd.; Third Point Ultra Ltd.; Third Point

6  LLC; and Does 1 through 25 (the "Defendants"). Nikoonahad asserted four claims for relief: (1)

7  rescission of the Amendment and restitution, (2) breach of fiduciary duty, (3) breach of contract,

8  and (4) negligence. On March 25, 2010, Defendants removed the action to this Court on the basis

9  of diversity of citizenship. The instant motion to remand is based upon Nikoonahad's assertion

10  that complete diversity does not exist because Schwartz is a citizen of California.

11

12                              **II. MOTION TO REMAND**

13  **A. Legal Standard**

14        Federal courts are courts of limited jurisdiction. That jurisdiction includes civil actions

15  between "citizens of different States" where the amount in controversy exceeds $75,000. 28

16  U.S.C. § 1332(a)(1) (2006). Any moving party asserting diversity jurisdiction bears the burden of

17  showing that diversity exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

18  (1994). In this case, the Court has jurisdiction only if citizenship of all Defendants are diverse

19  from the citizenship of Nikoonahad. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 88 (1996)

20  (stating that diversity jurisdiction requires "complete diversity of citizenship"). Similarly, when

21  an action has been removed from state court to federal court under 28 U.S.C. § 1441, there is an

22  equally "strong presumption" against removal jurisdiction, unless the defendant can establish that

23  removal was proper. *Gaus v. Miles*, 980 F.2d 564, 566 (1992). Any such doubt as to removability

24  must be resolved in favor of remand. *Id.*

25        There is an exception to the requirement of complete diversity in cases of fraudulent

26  joinder. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (citing

27  *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). A plaintiff cannot defeat

28

                                            4

1   diversity jurisdiction simply by joining a nondiverse defendant. *MacCabe*, 811 F.2d at 1339

2   ("fraudulent joinder is a term of art"). In order to prove fraudulent joinder, the defendant must

3   prove that "the plaintiff fails to state a cause of action against a resident defendant, and the

4   failure is obvious, according to the settled rules of the state...." *Mercado v. Allstate Ins. Co.*, 340

5   F.3d 824, 826 (9th Cir. 2003) (citing *McCabe*, 811 F.2d at 1339); *see Kruso v. International*

6   *Telephone & Telegraph Corp.*, 872 F.3d 1416, 1426 (9th Cir. 1989), *Maffei v. Allstate Cal. Ins.*

7   *Co.*, 412 F. Supp. 2d 1049, 1053 (E.D. Cal 2006) ("Joinder of a defendant is fraudulent if the

8   defendant cannot be liable to the plaintiff on *any* theory alleged in the complaint.") (emphasis

9   added). The court may go outside the pleadings, and the defendant may present facts showing the

10  joinder is fraudulent. *See Ritchy v. Upjohn Drug. Co.,* 139 F.3d 1313, 1318 (9th Cir. 1998).

11  However, there is "a heavy burden on the defendant as fraudulent joinder must be proven by

12  clear and convincing evidence and all disputed questions of fact and all ambiguities in the

13  controlling law are to be resolved in the plaintiff's favor." *Leung v. Sumitomo Corp. of Am.*, No.

14  09-5825 2010 U.S. Dist LEXIS 29039, at *6 (N.D. Cal. Mar. 9, 2010).

15

16  **B. Discussion**

17      Defendants argue first that Nikoonahad is attempting to forum-shop and that the instant

18  action is an "end-run around Judge Lloyd's disposition" with respect to Nikoonahad's earlier

19  direct action. (Defs.' Opp'n 4:22-25.) In *Nikoonahad I,* Nikoonahad sought to amend his

20  complaint to add Lash and Schwartz, but Judge Lloyd concluded that Nikoonahad lacked

21  standing to allege a claim for direct injuries. 2010 U.S. Dist. LEXIS 44150, at *15.

22  "Nikoonahad's allegations properly are characterized as claims of corporate overpayment that

23  must be treated as derivative under *Tooley*....[P]laintiff acknowledged that he could not identify

24  any damage accrued to him specifically." *Id.* at *15-16. Judge Lloyd explicitly stated that he was

25  dismissing Nikoonahad's action for lack of standing. *Id.* at *16.

26      Defendants' claim of "forum shopping" is not entirely accurate. Unlike the plaintiffs in

27  the cases upon which Defendants rely, Nikoonahad is not pursuing *duplicative claims* in federal

28

and state court. *E.g. Nazario v. Deere*, 295 F. Supp. 2d 360, 362-63 (S.D.N.Y. 2003). The instant derivative action obviously is distinct from Nikoonahad's earlier and unsuccessful direct claim.

Defendants also contend that Nikoonahad's derivative claim is implausible because Nikoonahad has unclean hands. Defendants claim that Schwartz is fraudulently joined because (1) like Schwartz, Nikoonahad approved the Amendment and the repurchase transaction and (2) as CEO,  Nikoonahad was complicit in winding up Solar Notion and firing employees pursuant to the very agreements he now alleges were not in the interest of Solar Notion's shareholders.

The doctrine of unclean hands is derived from the maxim, "[H]e who comes into equity must come with clean hands." *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985). The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. "He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." *Kendall-Jackson Winery Ltd. v. Super. Ct.*, 90 Cal. Rptr. 2d 743, 749 (Cal. Ct. App. 1990); s*ee Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814-15 (1945); *EEOC v. Recruit U.S.A., Inc.*, 939 F.2d 746, 752 (9th Cir. 1991). Although it is available in legal as well as equitable actions, *Fibreboard Paper Prods. Corp. v. E. Bay Union of Machinists*, 39 Cal. Rptr. 64, 89 (Cal. Ct. App. 1964), the doctrine does not apply to all prior bad conduct, but instead is an affirmative defense available "only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933).

While Nikoonahad's claim of breach of fiduciary duty obviously implicates Nikoonahad's own actions as a director, it does not follow that the claim necessarily lacks merit. Defendants' assertion that "Nikoonahad cannot plausibly claim that Solar Notion's purchase of Defendant's shares was unfair given that Nikoonahad himself voted in favor of the repurchase," (Defs.' Opp'n 6:16-18) ignores Nikoonahad's express allegations that the Amendment would have been passed with or without his vote and that Schwartz and Lash threatened him with termination and legal action against him prior to the vote. "Equity looks through forms to

1  substance."*Tex. v. Hardenburg*, 77 U.S. 88, 89 (1869).

2  Defendants' argument is even less persuasive in the context of a derivative action. In

3  *Hawes v. Oakland*, 104 U.S. 450, 460 (1882) the Supreme Court explained that a derivative suit

4  is one "founded on a right of action existing in the corporation itself, and in which the

5  corporation itself is the appropriate plaintiff." This is accomplished by allowing a shareholder "to

6  step into the corporation's shoes and to seek in its right the restitution he could not demand in his

7  own." *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949). Judge Lloyd already has

8  determined that Nikoonahad lacks standing to bring a direct suit against Schwartz.

9  Because Nikoonahad conceivably could show that Schwartz breached his fiduciary duty

10  as a Solar Notion director by putting his pecuniary interest above the interests of Solar Notion

11  and its shareholders, the joinder of Schwartz as defendant is not fraudulent.

12

13  **III. DISPOSITION**

14  Good cause therefor appearing:

15  Plaintiff's motion for remand is GRANTED. The action is hereby REMANDED to the

16  Santa Clara Superior Court. The Clerk shall transfer the file forthwith.

17  **IT IS SO ORDERED.**

18

19

20  **DATED: 6/22/2010**                **JEREMY FOGEL**
21                                      **United States District Judge**

22

23

24

25

26

27

28

7